UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

HOWARD COHAN,                                          CASE NO.: 1:24-cv-23338-KMW

      Plaintiff,

v.

HATEM BROTHERS, INC., a Florida
corporation, d/b/a HURRICANE GRILL &
WINGS OF KENDALL,

      Defendant.

_____/

**DEFENDANT HATEM BROTHERS, INC.'S MOTION FOR SUMMARY JUDGMENT**

Defendant, HATEM BROTHERS, INC., ("HATEM" or "Defendant"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby requests for this Court to enter summary judgment in Defendant's favor together with the inherent powers of the Court, and as grounds, states:

### I. Introduction.

The very purpose of the Americans with Disabilities Act, as amended ("ADA") is to assure equal opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities. See 42 U.S.C. §12101(a)(7). In particular, Title III of the ADA seeks to promote physical access to individuals with disabilities in places of public accommodation. Unlike the typical Title III lawsuit, in this case, there is no recalcitrant owner in need of judicial mandate to advance the purpose of the ADA. As set forth more fully herein, this case presents this Court with a perfect scenario within which to reward a proactive Defendant in finding the Plaintiff HOWARD COHAN's ("HOWARD" or "Plaintiff") action moot, as a matter of law.

1

Plaintiff brought this action against Defendant for alleged violations of the ADA related to the Defendant's restaurant located at 15500 SW 88th Street, Miami FL 33196 (the "Restaurant"). Plaintiff seeks two types of relief in his Complaint: (1) declaratory and injunctive relief and (2) recovery of his attorney's fees, expenses and costs. Plaintiff is entitled to neither on summary judgment nor otherwise.

As to the date of the filing of this Motion for Summary, Plaintiff has not provided Defendant with an expert report addressing Defendant's Restaurant's alleged ADA violations.

For the reasons set forth herein, Plaintiff's lawsuit is moot as Defendant has made all modifications identified in Plaintiff's Complaint to be in compliance with the ADA. Additionally, as Plaintiff's lawsuit is moot, Plaintiff is not the "prevailing party" as defined by the Supreme Court of the United States; therefore, Plaintiff's claim for attorney's fees, expenses and costs must fail, as a matter of law. Accordingly, Defendant, not Plaintiff, is entitled to summary judgment on all of Plaintiff's claims in his Complaint for injunctive relief, attorney's fees, expenses and costs.

Accordingly, Defendant's Motion for Summary Judgment should be granted, and summary judgment should be entered in Defendant's favor.

## II. **Standard for Summary Judgment.**

Defendant is entitled to the entry of summary judgment in its favor and against Plaintiff on the Complaint, as a matter of law. Summary Judgment is proper, where, upon motion of a party, the pleadings and other evidence on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment, as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In making this determination, the court must view all of the evidence in a light most favorable to the party opposing the motion and all justifiable inferences are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255. Still, the party opposing the summary judgment must go beyond its own allegations and designate specific facts showing there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

Accordingly, summary judgment is proper against a party who fails to make a showing sufficient of establish the existence of an element essential to that party's case. *Celotex Corp.*, 477 U.S. at 322-23. "In such a situation, there can be 'no genuine issues as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

**III. <u>Argument.</u>**

    **A. Defendant Is Entitled to Summary Judgment as Plaintiff's Claims Are Moot.**

        i. <u>Once An ADA Claim Is Moot There Is No Case or Controversy for the Court to Adjudicate.</u>

Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of "Cases" and "Controversies." U.S. Const. art. III, § 2; *Najjar v. Ashcroft*, 273 F.3d 1330, 1335 (11th Cir. 2001). "Because the judiciary is unelected and unrepresentative, the Article III case-or-controversy limitation, as embodied in the justiciability doctrine, presents an important restriction on the power of the federal courts." *Id.* The doctrine of mootness derives directly from the case-or-controversy limitation because "an action that is moot cannot be characterized as an active case or controversy. *Id*. A federal court therefore has an obligation to assure itself a case in controversy exists for the Court to adjudicate. A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *Id*.; *Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001). "Past exposure to illegal conduct does not in itself

show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Renne v. Geary*, 501 U.S. 312, 320-21 (1991). "This requisite ensures that the courts are able to grant effective relief, rather than rendering advisory opinions." *Medical Society of New Jersey v. Herr*, 191 F. Supp. 2d 574, 581 (D.N.J. 2002).

"The only remedy available for a violation of the ADA under a private right of action is injunctive relief. Accordingly, if no ADA violations exist at the time the court is asked to provide injunctive relief, the ADA claim is moot because there is no basis for relief and there is nothing for the court to order the facility to change." *Gasper v. Marie Callender Pie Shops*, CV 05-1435 CMB (SSX), 2006 U.S. Dist. LEXIS 96929, *4 (C.D. Cal. June 27, 2006). For these reasons, courts routinely dismiss ADA claims as moot when defendants modify noncompliant items. See *Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1131 (C.D. Cal. 2005) (holding that defendants' remedial efforts rendered plaintiffs ADA moot); *Pickern v. Best Western Timber Cove Lodge Marina Resort*, 194 F. Supp. 2d 1128, 1130 (E.D. Cal. 2002) (same); *Parr v. L & L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1087 (D. Haw. 2000) (same); *Independent Living Resources v. Oregon Arena Corp.*, 982 F. Supp. 698, 771 (D. Or. 1997) (same); *Troiano v. Supervisor of Elections in Palm Beach County*, 382 F.3d 1276, 1286 (11th Cir. 2004) (same); Brother v. CPL Invts., Inc., 317 F. Supp. 2d 1358, 1372 (S.D. Fla. 2004) (same); *Access Now, Inc., et al. v. Prime Retail, Ltd.*, No. 02-20287, slip op. at 15 (S.D. Fla. May 1, 2003 (summary judgment for mall where all items were either modified or modifications were not "readily achievable"); and *Access for the Disabled and Robert Cohen v. Brinker Florida, Inc.*, No. 02-60314 (S.D. Fla. Jan. 14, 2003) (see detailed discussion below).

ii. <u>Plaintiff's Claim Is Moot Because Defendant Has Made All of the Modifications in Plaintiff's Complaint in Compliance with the ADA.</u>

A case can become moot in a variety of ways such as by the defendant ceasing the challenged conduct or because the plaintiff has been made whole. When the defendant argues that

a case has become moot merely because he has ceased the challenged activity, then the voluntary cessation doctrine applies. The doctrine provides that mere voluntary cessation of illegal conduct does not render a case moot unless it appears that there is no reasonable expectation that the wrong will be repeated. See *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992).

In the case at bar, Defendant has made the modifications to the violations set forth in Plaintiff's Complaint. Defendant has done this by: (1) retaining general contractors and handymen with the express direction of making all modifications set forth in Plaintiff's Complaint, (2) undertaking and completing alterations to the Restaurant's seating indoor, [Complaint, DE 1, at ¶¶ 27(a) to 27(c)]; (3) undertaking and completing alterations to the Restaurant's men's restroom general [Complaint, DE 1, at ¶¶ 27(d) to 27(i)]; undertaking and completing alterations to the Restaurant's men's restroom accessible stall; [Complaint, DE 1, at ¶¶ 27(j) to 27(p)], (4) undertaking and completing alterations to the Restaurant's bar and bar area; [Complaint, DE 1, at ¶¶ 27(q) to 27(u)], and (5) undertaking and completing alterations to the Restaurant's outdoor seating [Complaint, DE 1, at ¶¶ 27(v) to 27(w)]. As such, Defendant has done more than merely cease a challenged conduct.

On or about February 19, 2025, the Defendant retained the services of ADA expert Gene Mattera to inspect the Restaurant regarding the ADA violations alleged in Plaintiff's Complaint. *A true and correct copy of Mr. Mattera's Affidavit of Compliance (Mattera's Aff.") is attached hereto as **Exhibit "A**."*

Mr. Mattera inspected the property located at 15500 SW 88th Street, Miami FL 33196 that conduct business under the name Hurricane Grill & Wings of Kendall (the "Restaurant") in two occasions: February 19, 2025, and March 7, 2025. *See **Ex. A** (Mattera's Aff. ¶ 12). A true and correct copy of Mr. Mattera's February 19, 2025, Inspection Report ("02/19/2025, Exp. Rep.") is*

5

*attached hereto as **Exhibit "B."** A true and correct copy of Mr. Mattera's March 7, 2025, Inspection Report ("03/07/2025, Exp. Rep.") is attached hereto as **Exhibit "C."***

During the February 19, 2025, inspection of the Restaurant's interior seating area, Mr. Mattera found that it lacked four (4) required spaces with one (1) required in a separated private party area violating ADA Accessibility Standards ("ADAAS"), Section 226.1. *See **Ex. A** (Mattera's Aff. ¶ 14 and See **Ex. B**, 02/19/2025 Exp. Rep., p. 11).* As a result of Mr. Mattera's inspection findings of the Restaurant's interior seating area, he recommended Defendant to add four (4) compliant seating spaces to the Restaurant's interior seating area to be in compliance with the ADAAS. *See **Ex. A** (Mattera's Aff. ¶ 15 and See **Ex. B**, 02/19/2025 Exp. Rep., p. 11).*

During the February 19, 2025, inspection, Mr. Mattera found that the allegations of ADA's violations in Plaintiff's Complaint regarding the Restaurant's men's restroom general area were a misstate of law and facts because (i) directional signage is not required where all restrooms are accessible, (ii) the opening force for the men's restroom doors was under 5 lbf, (iii) the required clear floor space of 30" by 48" was provided at urinals, (iv) all pipes were insulated at lavatories, (v) countertops and rims of sinks were within the established parameters of below 34" AFF, and (vi) the dryer activated when hands were 46" AFF. *See **Ex. A** (Mattera's Aff. ¶ 16 and See **Ex. B**, 02/19/2025 Exp. Rep., p. 11).* As a result of not finding any ADA violations in the Restaurant's men's restroom general area, Mr. Mattera did not make any recommendations to Defendant. *See **Ex. A** (Mattera's Aff. ¶ 17 and See **Ex. B**, 02/19/2025 Exp. Rep., p. 11).*

During the February 19, 2025, inspection, Mr. Mattera found that the majority of the ADA's violations alleged in Plaintiff's Complaint regarding the men's restroom accessible stall were unfounded. *See **Ex. A** (Mattera's Aff. ¶ 18 and See **Ex. B**, 02/19/2025 Exp. Rep., p. 12).* During February 19, 2025, inspection of the Restaurant's men's restroom accessible stall, Mr. Mattera

found that (i) there were handles on both sides, (ii) the water closet centerline was 18" from the side wall, (iii) the rear grab bar was the proper size, but too far from wall, (iii) the hand dryer was automatic and activated when hands were 46" AFF, (iv) the toilet paper dispenser was properly located, but the soap dispenser was less than 12" above the end of rear grab bar, (v) there was no obstructions within the water closet CFS and (vi) all parts of the stall door were in compliant locations. *See **Ex. A** (Mattera's Aff. ¶ 19 and See **Ex. B**, 02/19/2025 Exp. Rep., p. 12).* As a result of Mr. Mattera's inspection findings of the Restaurant's men's restroom accessible stall, he recommended Defendant to relocate the rear grab bar to be exactly 6" from the side wall to be in compliance with the ADAAS. *See **Ex. A** (Mattera's Aff. ¶ 20 and See **Ex. B**, 02/19/2025 Exp. Rep., p. 12).*

During the February 19, 2025, inspection, Mr. Mattera found that the ADA's violations alleged in Plaintiff's Complaint regarding the bar and the bar area were unfounded. *See **Ex. A** (Mattera's Aff. ¶ 21 and See **Ex. B**, 02/19/2025 Exp. Rep., p. 13).* He found that both bars (interior and exterior) had less than 20 total seating spaces with one accessible seating space on each side in compliance with the ADAAS; as such, Mr. Mattera made no recommendation to Defendant. *See **Ex. A** (Mattera's Aff. ¶ 22 and See **Ex. B**, 02/19/2025 Exp. Rep., p. 13).*

During Mr. Mattera's February 19, 2025, inspection, he found that the Restaurant's existing outdoor seating spaces were at high top tables, and even though Plaintiff did not require accessible elements for wheelchair users, the outdoor seating spaces lacked an accessible table and while not a barrier to Plaintiff's use, was in violation of ADAAS Sections 226.1, 226.2 and 902.3. *See **Ex. A** (Mattera's Aff. ¶ 23 and See **Ex. B**, 02/19/2025 Exp. Rep., p. 13).* As a result of Mr. Mattera's, he recommended Defendant to add a compliant accessible table to the outdoor seating spaces to

7

be in compliance with the ADAAS. *See Ex. A (Mattera's Aff. ¶ 24 and See Ex. B, 02/19/2025 Exp. Rep., p. 13).*

After Mr. Mattera's February 19, 2025, inspection, Mr. Mattera inspected the Restaurant a second time on March 7, 2025, to verify if Defendant had followed the recommendations he made during the February 19, 2025, inspection. *See Ex. A (Mattera's Aff. ¶ 25).*

During Mr. Matera's March 7, 2025, inspection of the Restaurant seating indoors, he found that it provided nine (9) interior seating spaces designated for disabled guests, all of which complied with the ADAAS; There were 170 total seating spaces in two (2) dining areas; The interior seating had eight (8) required spaces in the main dining room and one (1) required in the separated private party area in accordance with the ADAAS Section 226.1. *See Ex. A (Mattera's Aff. ¶ 26 and See Ex. C, 03/07/2025 Exp. Rep., p. 10).* Based on Mr. Mattera's findings during the March 7, 2025, inspection, it is his expert opinion the Restaurant's indoors seating area is designed in accordance with the ADAAS, and all of the barriers alleged in Plaintiff's Complaint, regarding the Restaurant's indoor seating, have been corrected and are compliant with the ADAAS. *See Ex. A (Mattera's Aff. ¶ 27 and See Ex. C, 03/07/2025 Exp. Rep., p. 10).*

During Mr. Matera's March 7, 2025, inspection of the Restaurant's men's restroom general area, he did not find any violations of the ADAAS. *See Ex. A (Mattera's Aff. ¶ 28 and See Ex. C, 03/07/2025 Exp. Rep., p. 10).* Based on Mr. Mattera's findings during the March 7, 2025, inspection, it is his expert opinion the Restaurant's men's restroom general area is designed in accordance with the ADAAS, and all of the barriers alleged in Plaintiff's Complaint, regarding the Restaurant's men's restroom general area, have been corrected and are compliant with the ADAAS. *See Ex. A (Mattera's Aff. ¶ 29 and See Ex. C, 03/07/2025 Exp. Rep., p. 10).*

During Mr. Mattera's March 7, 2025, inspection of the Restaurant's men's restroom accessible stall, he did not find any violations of the ADAAS. *See Ex. A (Mattera's Aff. ¶ 30 and See Ex. C, 03/07/2025 Exp. Rep., p. 11).* Based on Mr. Mattera's findings during the March 7, 2025, inspection, it is his expert opinion the Restaurant's men's restroom accessible stall is designed in accordance with the ADAAS, and all of the barriers alleged in Plaintiff's Complaint, regarding the Restaurant's men's restroom accessible stall have been corrected and are compliant with the ADAAS. *See Ex. A (Mattera's Aff. ¶ 31 and See Ex. C, 03/07/2025 Exp. Rep., p. 11).*

During Mr. Mattera's March 7, 2025, inspection of the Restaurant's women's restroom general area, he did not find any violations of the ADAAS. *See Ex. A (Mattera's Aff. ¶ 32 and See Ex. C, 03/07/2025 Exp. Rep., p. 11).* Based on Mr. Mattera's findings during the March 7, 2025, inspection, it is his expert opinion the Restaurant's women's restroom general area is designed in accordance with the ADAAS. *See Ex. A (Mattera's Aff. ¶ 33 and See Ex. C, 03/07/2025 Exp. Rep., p. 11).*

During Mr. Mattera's March 7, 2025, inspection of the Restaurant's women's restroom accessible stall, he did not find any violations of the ADAAS. See Ex. A (Mattera's Aff. ¶ 34 *and See Ex. C, 03/07/2025 Exp. Rep., p. 11).* Based on Mr. Mattera's findings during the March 7, 2025, inspection, it is his expert opinion that the Restaurant's women's restroom accessible stall is designed in accordance with the ADAAS. *See Ex. A (Mattera's Aff. ¶ 35 and See Ex. C, 03/07/2025 Exp. Rep., p. 11).*

During Mr. Mattera's March 7, 2025, inspection of the Restaurant's interior and exterior bar and bar areas, Mr. Mattera did not find any violations of the ADAAS. *See Ex. A (Mattera's Aff. ¶ 36 and See Ex. C, 03/07/2025 Exp. Rep., p. 12).* Based on Mr. Mattera's findings during the March 7, 2025, inspection, it is his expert opinion the Restaurant's interior and exterior bar, and

bar areas are designed in accordance with the ADAAS, and all of the barriers alleged in Plaintiff's Complaint, regarding the Restaurant's interior and exterior bar and bar areas have been corrected and are compliant with the ADAAS.  *See* ***Ex. A*** *(Mattera's Aff. ¶ 37 and See* ***Ex. C****, 03/07/2025 Exp. Rep., p. 12).*

During Mr. Mattera's March 7, 2025, inspection of the Restaurant's outdoor seating area, he did not find any violations of the ADAAS. *See* ***Ex. A*** *(Mattera's Aff. ¶ 38 and See* ***Ex. C****, 03/07/2025 Exp. Rep., p. 12).* Based on Mr. Mattera's findings during the March 7, 2025, inspection, it is his expert opinion the Restaurant's outdoor seating area is designed in accordance with the ADAAS, and all of the barriers alleged in Plaintiff's Complaint, regarding the Restaurant's outdoor seating area have been corrected and are compliant with the ADAAS. *See* ***Ex. A*** *(Mattera's Aff. ¶ 39 and See* ***Ex. C****, 03/07/2025 Exp. Rep., p. 12).*

Based on the nature of all the barriers corrections made by Defendant, it is Mr. Mattera's professional opinion that there is no reasonable expectation that the wrong will be repeated. *See* ***Ex. A*** *(Mattera's Aff. ¶ 40).*

The case of *Hickman v. Missouri*, 144 F.3d 1141 (8th Cir. 1998) is illustrative and on point. Four paraplegic inmates filed a complaint alleging ADA violations in Western Missouri Correctional Center's ("WMCC") facilities and services. The court refused to grant injunctive relief because defendants had substantially complied with the ADA and were continuing to correct deficiencies, and plaintiffs had already been released on parole by the time of the court's decision.

However, the court granted plaintiffs' request for declaratory relief, finding that certain of WMCC's facilities and programs violated the ADA. On appeal, the State argued that the district court lacked subject matter jurisdiction to issue declaratory relief because plaintiffs' claims were moot at the time of the court's decision. The plaintiffs argued that the voluntary cessation doctrine

saved their claims from being moot. The Eighth Circuit Court of Appeals disagreed with plaintiffs and vacated the district court's judgment granting declaratory relief, finding the voluntary cessation doctrine inapplicable, stating:

> It is true that generally, the voluntary cessation of illegal conduct ... does not make a case moot. However, defendants' compliance with the ADA, including structural changes such as installation of ramps, pull and grab bars, and chair lifts, is far more than mere voluntary cessation of alleged illegal conduct, where we would leave the defendants . . . free to return to [their] old ways. Id. at 1144.

The case at bar is analogous to Hickman. Thus, the traditional voluntary cessation doctrine per se does not apply. Defendant has done far more than merely cease a challenged conduct, it has committed to compliance with the ADA by undertaking to modify the Restaurant's (i) indoor seating area, (ii) men's restroom general area, (iii) men's restroom accessible stall, (iv) interior and exterior bar and bar areas, and (v) outdoor seating area. Consequently, if the voluntary cessation doctrine was applied to this case, it would not save Plaintiff's ADA claims from being moot because the alleged architectural barriers at issue have been remedied and cannot reasonably be expected to recur. Courts have drawn a distinction between ADA violations that result from ineffective policy and those that are of a physical nature, recognizing that the latter are not likely to recur.

For example, in *Sheely v. MRI Radiology Network, P.A.*, 505 F. 3d 1173 (11th Cir. 2007), the plaintiff, who was legally blind and aided by a guide dog, commenced a Title III ADA action against a diagnostic imaging facility because she was not permitted to take her dog beyond the main waiting room. Sheely, at 1177-78. The defendant had an unwritten policy that service animals were permitted only in the main waiting room area. *Id*. at 1178. The defendant successfully moved for summary judgment almost nine months into the lawsuit, by arguing that it had implemented a

new, written service animal policy two days earlier that rendered all of the plaintiff's claims moot. *Id*. at 1181.

However, *Sheely* is clearly distinguishable from the case at hand. It is a policy case – not an architectural barrier case. As discussed above, the traditional voluntary cessation doctrine likely does not apply to architectural barriers cases. Unlike the circumstances in *Sheely*, the facts at hand indicate long-term modifications made to fixtures and structures at significant expense. Thus, the concern expressed in *Sheely* that the defendant might revert back to its former unwritten policy of excluding service animals has no application in the instant action.

Rather, this case is analogous to other Title III ADA cases involving architectural barriers. The case of *Sharp v. Rosa Mexicano*, 496 F. Supp. 2d 93 (D.D.C. 2007), is illustrative. In *Sharp*, the plaintiff brought an ADA action alleging an inaccessible wash basin fixture in the restaurant's men's restroom. There were three alleged barriers: (1) a bar under the washstand preventing a wheelchair from rolling underneath; (2) the washbasin was at the wrong height; and (3) the hardware on the faucet apparatus was noncompliant. *Id*. at 95. During the parties' cross-motions for summary judgment, the defendant submitted evidence showing that the men's restroom currently included an accessible private stall free of barriers. *Id*. The parties disputed whether plaintiff had not noticed the accessible private stall when he initially visited the restaurant or whether it was constructed afterwards. *Id*.

In considering whether the case was moot, the court explicitly examined the voluntary cessation exception and concluded that the alleged unlawful conduct could not reasonably be expected to recur because the accessible sink-equipment at issue was a "fixture" within the restaurant. *Id*. at 99. Quoting from one federal district court decision within the Ninth Circuit and citing another, the district court held, "[t]he alleged discrimination cannot reasonably be expected

12

to recur because 'structural modifications... are unlikely to be altered in the future.'" *Id*. (quoting

*Indep. Living Resources v. Oregon Arena Corp.*, 982 F. Supp. 698, 774 (D. Or. 1997) and citing

*Grove v. De La Cruz*, 407 F. Supp. 2d 1126, 1130-31 (C.D. Cal. 2005) (holding that installation of

grab bars by restaurant rendered plaintiffs ADA claims moot, and finding no basis to conclude the

challenged conduct would be repeated)).

Likewise, Plaintiff has alleged the existence of architectural barriers at the subject facility,

which have been remedied and are not likely to recur. [Complaint, DE 1, at ¶¶ 27(a) to 27(w)]. The

Southern District of Florida has addressed this very issue and held that the plaintiffs' claim there

for injunctive relief under the ADA was moot. The defendant in that case performed and/or

committed to perform the requested modifications, precisely as Defendant has done in the present

case where Defendant has performed the requested modifications. *See Access for the Disabled and*

*Robert Cohen v. Brinker Florida, Inc.*, No. 02-60314 (S.D. Fla. Jan. 14, 2003). *A true and correct*

*copy of the case slip opinion is attached hereto for the Court's convenience as* **Exhibit "D***."*

In Brinker, the defendant:

- Performed all of the interior modifications at issue.
- Modified the exterior items that could be modified without city permits.
- Applied for all necessary permits to complete the remaining exterior modifications.
- Created the written policies that plaintiff proposed to conform with the ADA.

*Id*. at slip op. at 2. Since the defendant either had performed all the modifications or was

waiting for City permits to do so, it was unnecessary for the court to enjoin the defendant to do

what it had already done or was doing. The district court expressly found:

> [The defendant's actions] limit the actions the Court can take. The remedies
> requested by Plaintiff are, for the most part, completed or in the process of being
> completed. An order by the Court to remedy the situation can do nothing further
> than what [defendants] state they are already doing. Any course of action by the
> Court will be repetitive and meaningless.

13

*Id*. The court found the claims moot and dismissed them in their entirety. *Id*. at 3. An identical result is warranted here.

Defendant has removed the allegedly discriminatory barriers at issue here. In fact, Defendant went further than the defendant in *Brinker* as it has completed the remediations recommended in Plaintiff's Complaint as of the filing of the instant motion. [Compl. at ¶¶ 27(a) to 27(w).] Those modifications negate any need for an injunction and render Plaintiff's claim for injunctive relief moot. *See Matthews v. NCAA*, 179 F. Supp. 2d 1209, 1227 (E.D. Wash. 2001); *Dowling v. MacMarin, Inc.*, 156 F.3d 1236, 1998 WL 398386, at *1 & n.1 (9th Cir. July 2, 1998); *see also Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998) (case mooted when one month after lawsuit filed airport authority lifted prohibition on distribution of literature). Whatever violations might have existed have been and/or will shortly be eradicated. *See Dow Jones & Co. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001); see also *Access Now, Inc., et al. v. Prime Retail, Ltd.*, No. 02 20287, slip op. at 15 (S.D. Fla. May 1, 2003) (summary judgment for mall where all items were either modified or modifications were not "readily achievable").

To the extent that Plaintiff asserts that Defendant's claims of mootness should fail as Defendant, a single asset entity, is a "serial violator" of the ADA, such claims are wholly unsupported. Rather, Defendant is an entity which was created to own and operate the Restaurant which is the subject property in this action and owns no other property. Plaintiff knew or should have known these facts throughout the pendency of this action. A simple review of the public records shows that Defendant owns no other real property in Miami Dade County, Florida or otherwise. As such, Plaintiff's "serial violator" claims are patently false and should be given no consideration.

14

To the extent that Plaintiff asserts that Defendant's claims of mootness should fail as Defendant had a policy of allowing its aisles and paths of travel, to become cluttered or blocked and allowing its signage and bathroom elements to fall in disrepair, such claims are unsupported both factually and legally. There is no record evidence of such a "policy," nor does any such policy exist.

Additionally, the ADA only applies to "architectural barriers," not temporary or removable barriers, such as chairs, boxes, or open doors. *See, e.g., Chapman v. Pier 1 Imports*, 2006 WL 1686511, *10 (E.D. Cal. 2006). In fact, the court in *Watanabe v. Home Depot USA, Inc.*, 2003 WL 24272650 *4 (C.D. Cal. 2003) also found "the temporary blocking of shelves is not discriminatory or in violation of the ADA, as the blocking precludes everyone's access."

Since the claims are moot, summary judgment should be entered in favor of Defendant and against Plaintiff, as a matter of law.

### iii. Plaintiff Is Not Entitled to Recover His Attorney's Fees Under The ADA.

Apart from injunctive relief, Plaintiff seeks to recover attorney's fees, expenses, and costs. [Compl. at ¶33.] He requests this relief pursuant to 42 U.S.C. § 12205, which provides courts with discretion to allow a "prevailing party" reasonable fees, expenses, and costs. Plaintiff, however, is not the "prevailing party" as defined by the Supreme Court. In *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598 (2001), the Supreme Court held that plaintiffs are not "prevailing parties", and attorney fees are not awardable under the ADA absent an enforceable judgment on the merits or a court-ordered consent decree. *Id*. at 600. Before *Buckhannon*, some courts, including the Eleventh Circuit, had held that plaintiffs might recover prevailing party fees under the "catalyst theory." *Id*; *American Disability Ass'n v. Chmielarz*, 289 F.3d 1315, 1318 (11th Cir. 2002). According to the catalyst theory, a plaintiff

"prevailed" if her lawsuit catalyzed the defendant to make changes, even if the changes were made "voluntarily"--i.e., without a court order. *Buckhannon* rejected the catalyst theory.

In *Buckhannon*, residential care facilities filed suit to challenge cease and desist orders issued by the West Virginia State Fire Marshall, as violative of the ADA and the Fair Housing Amendments Act ("FHAA"). After the suit was filed, the Fire Marshall stayed enforcement of the cease and desist orders; the West Virginia legislature enacted bills eliminating the basis for the orders; and the Fire Marshall moved to dismiss the suit as moot. *Buckhannon*, 532 U.S. at 600-01. When the district court found the case moot, the residential care facilities moved for prevailing party attorney's fees under the ADA (via § 12205) and the FHAA, relying on the catalyst theory. *Id.* at 601.

The Supreme Court rejected the catalyst theory and held that the "prevailing party" fee-shifting provisions of the ADA (and FHAA) require either a judgment on the merits or a court-ordered consent decree. *Id.* at 600, 610. A defendant's voluntary change was deemed not enough: A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change. Our precedents thus counsel against holding that the term "prevailing party" authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties. ... We cannot agree that the term "prevailing party" authorizes federal courts to award attorney's fees to a plaintiff who, by simply filing a nonfrivolous but nonetheless potentially meritless lawsuit (it will never be determined), has reached the "sought-after destination" without obtaining any judicial relief. *Id.* at 605-06.

After *Buckhannon*, courts may no longer analyze "the defendant's subjective motivations in changing its conduct"-for example, whether defendant made its changes and mooted the suit to

16

avoid expensive litigation or out of fear that plaintiff would win. *Id*. at 609-10. Instead, the "essential test" now "requires the plaintiff to achieve a 'judicially sanctioned change in the legal relationship of the parties.'" *Chmielarz*, 289 F.3d at 1319, quoting *Buckhannon*, 532 U.S. at 605. After *Buckhannon*, the focus is on the obtaining of judicial relief, not defendant's subjective motivations. *Oil, Chemical and Atomic Workers Int'l Union v. Dept. of Energy*, 288 F.3d 452, 459 (D.C. Cir. 2002).

Applying *Buckhannon* here, Plaintiff is not entitled to prevailing party fees, expenses, and costs. Although Plaintiff here may obtain the relief they sought in his Complaint, it was not through a judgment on the merits, or a court ordered consent decree but by the voluntary conduct of Defendant. Why Defendant made modifications to the Restaurant no longer matters, after *Buckhannon*. It is enough that there is no judicial imprimatur on the changes made--it will never be determined if Plaintiff's lawsuit had merit. There has been no "judicially sanctioned change in the legal relationship of the parties," and that ends the inquiry. Under *Buckhannon*, it does not matter whether Plaintiffs' lawsuit catalyzed the changes: the very holding of *Buckhannon* was to reject the catalyst theory of fee awards. See *Buckhannon*, 532 U.S. at 610.

Denying a fee award here would be consistent with the case law developed since *Buckhannon*. Courts have repeatedly and consistently determined that *Buckhannon* precludes awards where the defendant mooted the action by voluntarily making the changes the plaintiff's lawsuit sought. *See, e.g., Perez-Arellano v. Smith*, 279 F.3d 791, 795 (9th Cir. 2002) (applying *Buckhannon* to deny fees where INS voluntarily naturalized plaintiff after he filed action to obtain naturalization); *New York State Federation of Taxi Drivers, Inc. v. Westchester County Taxi and Limousine Com'n*, 272 F.3d 154, 158-59 (2d Cir. 2001) (taxi drivers not "prevailing" where Commission voluntarily changed licensing rule in response to lawsuit challenging rule's

17

constitutionality; reversing order of fees); *Brinker*, No. 02-60314, slip op. at 3, *supra*, (attached hereto as Exh. "B") (plaintiff not "prevailing" where restaurant made modifications after plaintiff filed lawsuit under Title III of ADA); *see also Race v. Toledo-Davila*, 291 F.3d 857, 858-59 (1st Cir. 2002) (applying *Buckhannon* to deny fees; although court awarded a preliminary injunction, it was to safeguard plaintiff's interests and did not reach merits of claim).

In light of the foregoing, Plaintiff's action is now moot. Summary judgment should be entered in favor of Defendant and against Plaintiff on Plaintiff's Complaint, including his claim for injunctive relief and attorneys' fees, as a matter of law.

**IV. <u>Conclusion.</u>**

For the foregoing reasons, Defendant's Motion for Summary Judgment should be granted, as a matter of law.

**WHEREFORE**, the Defendant respectfully requests this Honorable Court enter an order granting Defendant's Motion for Summary Judgment and grant any other relief this Honorable Court deem just and proper.

Respectfully submitted,



<u>*/s/ Alian M. Perez*</u>
Alian M. Perez
Florida Bar No. 36340
Ocean Bank Building
10950 N. Kendall Drive
Second Floor
Miami, Florida 33176
Phone: 786-528-5288
Facsimile: 305-421-0481
Primary Email: efilings@yourlegalarmor.com
Secondary Email: aperez@yourlegalarmor.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 22nd, 2025, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipts. Parties may access this filing through the Court's system.

*/s/ Alian M. Perez*
Alian M. Perez
Florida Bar No. 36340
